UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

--------------------------------------------------------------------------------------------------------------

Mark Clark, individually and on )
behalf of those similarly situated, )
) Civil Action No.
Plaintiff, )
vs. ) CLASS ACTION COMPLAINT
)
Ticketmaster Entertainment, Inc. ) Jury Trial Demanded
d/b/a Ticketmaster LLC f/k/a )
Ticketmaster-Minnesota, and )
TNOW Entertainment Group, Inc. )
d/b/a TicketsNow.com, Inc., )
)
Defendants. )
)

--------------------------------------------------------------------------------------------------------------

  Plaintiff Mark Clark, by and through his counsel, individually and on behalf of all other persons similarly situated, complains against the defendants as follows:

## **INTRODUCTION**

  1. This class action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who attempted to purchase tickets for various events from Defendant Ticketmaster Entertainment, Inc. d/b/a Ticketmaster LLC f/k/a Ticketmaster-Minnesota ("Ticketmaster") and were directed by Ticketmaster to Defendant TNOW Entertainment Group, Inc. d/b/a TicketsNow.com, Inc. ("TicketsNow"), and who purchased tickets from TicketsNow at a ticket price that was higher than the face value of the tickets during the period beginning on January 15, 2008 (the date of the acquisition of TicketsNow by Ticketmaster) through the present. Excluded from the Class are individuals who purchased tickets for the May 11, 2009 Bruce Springsteen Concert and received

reimbursement from Ticketmaster for amounts they paid in excess of the face value of the tickets they received from TicketsNow. Also excluded from the Class are Defendants, any entity in which Defendants have a controlling interest and any officers, directors or employees of the Defendants.

2.     During the class period, Ticketmaster and TicketsNow (a wholly owned subsidiary of Ticketmaster) conspired to defraud the Class by engaging in an unlawful scheme to artificially and systematically inflate the prices of event tickets sold by Defendants.

3.     Through agreements with venues, artists, and/or event promoters, Ticketmaster obtains (usually exclusive) rights to sell tickets to sporting, music, and other entertainment events. These tickets are sold on their website, www.ticketmaster.com. When tickets are scheduled to go on sale, customers typically log into the Ticketmaster website and purchase the desired tickets. Ticketmaster, however, has engaged in a practice whereby large quantities of tickets, usually the most desirable tickets, are pre-sold, redirected or otherwise conveyed by express or implicit agreement to TicketsNow.com, a secondary seller which charges ticket purchasers more than face value for tickets—sometimes up to thousands of dollars more than face value.

4.     The result is that, within minutes or even seconds of tickets to a particular event going on sale, Ticketmaster runs out of the limited quantity of tickets it has not diverted to TicketsNow. Customers who are still online but who have not yet purchased tickets are then rerouted directly from Ticketmaster's website to TicketsNow.com. The format and layout of the two webpages are purposely similar to conceal the fact that

TicketsNow is a separate entity which sells tickets on the secondary market and at above face value. In fact, TicketsNow expressly identifies itself as a Ticketmaster company. Consequently, although the Ticketmaster website may state that tickets to the event are "sold out" or otherwise unavailable, by redirecting customers to TicketsNow, Ticketmaster fools customers into believing that the tickets are "sold out" or otherwise unavailable from Ticketmaster when they are not, and/or that they are purchasing tickets at face value directly from Ticketmaster.

5.    This artificial manipulation of the market price for tickets results in purchasers having no choice but to pay grossly inflated prices for tickets, often just minutes after the tickets first become available to the public.

6.    The aforesaid misrepresentations and omissions violated, and continue to violate, Minnesota's consumer protection statutes, and result in Defendants' unjust enrichment. This action seeks, *inter alia*, damages and compensation to all class members from Defendants, interest, disgorgement, costs of suit, and attorneys' fees as permitted under the Minnesota's consumer protection statutes and/or the common law, and any other relief deemed just and proper by the Court.

**<u>PARTIES</u>**

7.    Plaintiff, Mark Clark, is a Minnesota resident. On February 1, 2009, he purchased six tickets for a May 5 Elton John/Billy Joel concert at the Xcel Energy Center in St. Paul, Minnesota. He attempted to purchase the tickets on Ticketmaster's website, but was redirected to TicketsNow, where he was offered six tickets at a price of $306.00, which he understood to be the price for all six tickets. Mr. Clark authorized TicketsNow to deduct the

3

money for the tickets directly from his checking account. It was only after Mr. Clark authorized the transaction that he was provided with the total—$1,857.25 for six tickets with a face value of $105.00 each. Mr. Clark immediately called TicketsNow in an attempt to rescind the transaction, but TicketsNow refused to do so or to refund Mr. Clark for the difference between the face value of the tickets and what Mr. Clark paid.  Mr. Clark had to scramble to find the funds and make a deposit into his checking account the next day, or be overdrawn on his checking account.  TicketsNow removed the $1,857.25 from Mr. Clark's checking account on February 3, 2009, and the six tickets were delivered to Mr. Clark a couple of days later.

8.     Ticketmaster Entertainment, Inc. d/b/a Ticketmaster, f/k/a Tickemaster, LLC, f/k/a Ticketmaster-Minnesota ("Ticketmaster") is a Delaware corporation and has its principal corporate offices at 8800 W. Sunset Blvd, West Hollywood, California, 90069.

9.     Ticketmaster holds itself out as the world's largest ticketing services company.

10.     TNOW     Entertainment     Group,     Inc.     d/b/a TicketsNow.com, Inc. ("TicketsNow") is an Illinois corporation and has principal corporate offices located at 3800 Golf Road, Suite 125, Rolling Meadows, Illinois, 60008 and 620 N. Rte. 31, Suite C, Crystal Lake, Illinois, 60012.

11.     On January 15, 2008, Ticketmaster acquired TicketsNow, which presently operates as a wholly-owned subsidiary of Ticketmaster.

12.     TicketsNow operates as a marketplace and broker in the secondary resale market for event tickets.

4

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this class action pursuant to the

Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because members of the Nationwide

Class are citizens from a state different from the Defendants' corporate residence and the

aggregate amount in controversy exceeds $5,000,000.  This Court has personal jurisdiction

over the parties because Plaintiff is located in and is a resident of this State, and Defendants

systematically and continuously conduct business in this State, including marketing,

advertising, and selling tickets to residents in this State for events located in this State.

14.     Venue is proper in this District under 28 U.S.C. § 1391 because Ticketmaster

and TicketsNow and the other named defendants engaged in substantial conduct relevant to

Plaintiff's claims within this District and caused harm to Plaintiff and Class members

residing within this District.

## SUBSTANTIVE ALLEGATIONS

15.     Ticketmaster is the largest seller of event tickets in the world.  In 2007, the

company sold more than 141 million tickets with a value of more than $8.3 billion dollars.

16.     TicketsNow is the second largest seller of event tickets in the secondary

resale market.

17.     Combined, Ticketmaster and TicketsNow are, by a wide margin, the largest

seller of event tickets in the primary and secondary ticket markets.

18.     The face value of tickets sold by Ticketmaster is routinely significantly less

than the market value of those tickets as sold in the secondary market, particularly for high

demand sporting and entertainment events.

19.     Ticketmaster earns a commission and other charges on each ticket sold, first, in the primary ticket market and, subsequently, in the secondary sales market when tickets are sold through its subsidiary TicketsNow.

20.     Tickets in the secondary market are routinely sold at a much higher price than the face value of the ticket earned by Ticketmaster in the primary market and, hence, tickets sold there earn significantly higher commissions and other charges which, at least in part, are based upon the sale price (market value) of the ticket.

21.     Ticketmaster works closely with event owners and promoters, artists and artist management companies to set the face value price of tickets that are distributed in the primary ticket market.

22.     In addition to earning sales charges and commissions on tickets sold in the primary market, Ticketmaster has every economic incentive to attempt to direct ticket purchasers and ticket sellers/brokers to use its secondary market seller TicketsNow through which to sell tickets.

23.     Ticketmaster and TicketsNow earn commissions and other charges in the secondary market when brokers and others re-sell through TicketsNow.

24.     Those commissions and sales charges obtained in the secondary market are not earned when individual members of the public purchase tickets in the primary market from Ticketmaster and then use those tickets or sell them in private sales (i.e. do not attempt to resell them in the secondary market).

25.     Ticketmaster and TicketsNow have every economic incentive to maximize the number of tickets resold in the secondary market through TicketsNow, both directly and

through brokers, and to minimize the number of tickets purchased in the primary market and used by individual members of the public.

26.     Many large independent ticket brokers, in addition to individual ticket purchasers among the public, attempt to purchase tickets from Ticketmaster when they go on sale at set times.

27.     Within literally moments of tickets going on sale by Ticketmaster, and often less than one minute later for high-demand events, those tickets are being offered for resale in the secondary market by Ticketsnow at greatly inflated prices.

28.     Ticketmaster works closely with TicketsNow and brokers, artists, artist management companies, event owners and promoters and others, to move tickets directly to the secondary ticket resale market through TicketsNow.

29.     Ticketmaster also works closely with artists, artist management companies, event owners and promoters and others to bypass the primary ticket market and move tickets directly to the secondary market, and specifically to TicketsNow, where higher commissions and other charges are earned without the opportunity for members of the public to purchase such tickets at face value in the primary market.

30.     The assistance and information provided by Ticketmaster and TicketsNow and the movement of tickets directly to the secondary market contradicts the stated representations of Ticketmaster and TicketsNow that they do not provide such assistance to ticket brokers and others and that they provide members of the public with equal opportunity and access to purchase all such event tickets.

31.     TicketsNow former president Cheryl Rosner even stated on July 17, 2008 on her blog, that one of Ticketmaster's early goals was to begin "driving customers to TicketsNow.com" – not just when no tickets were available in the primary market.

32.     Ticketmaster affirmatively represents to the public that ticket brokers acquire tickets by means of "put[ting] their capital at risk by purchasing tickets from season ticket holders, conventional public sales, and individual ticket holders… This means that they and their affiliates are online at the time of the onsale just like any other consumer."  This is not accurate or true as Ticketmaster, through its subsidiaries, ensures that brokers and others have a distinct advantage in purchasing event tickets in the primary market and transferring them to the secondary market to the detriment of individual public purchasers who do not have an equal purchase opportunity.

33.     TicketsNow specifically represents to the public that "We don't divert tickets from Ticketmaster and list them for resale on TicketsNow.  This simply does not happen." This representation is not accurate or true.  Ticketmaster and TicketsNow do divert tickets for sale on the TicketsNow website and this has been confirmed through reporting by industry trade publications with knowledge of such transaction details.   Furthermore, TicketsNow's own website even states that "The tickets offered through TicketsNow are owned, listed for sale and fulfilled by the party listing the ticket (which on occasion may include TicketsNow/Ticketmaster)."

34.     These misrepresentations and inaccurate statements lead consumers to believe that tickets are being offered on TicketsNow only when there are no tickets remaining or available in the primary ticket market and, further, that there is no common interest between

Ticketmaster and TicketsNow in moving tickets to the secondary ticket market. Individual purchasers are therefore misled to purchase more expensive tickets on the TicketsNow website as the only available option.

35.     Ticketmaster also affirmatively represents to the public that it "has been at the forefront of efforts to prevent the illegal diversion of tickets away from fans by the use of automated programs."  This representation is not true or accurate.  In fact, as alleged above, Ticketmaster has diverted significant quantities of tickets to its secondary seller, TicketsNow.

36.     Defendants' practices, among other characterizations, constitute a classic "bait and switch" scheme:  they offer tickets to customers at a supposed "face value" price, but then switch to a higher price once the customer has committed to purchasing the tickets.

37.     In addition to affirmative misrepresentations and misleading consumers as described, Ticketmaster and its subsidiaries engage in other types of wrongful and fraudulent conduct.  When tickets go on sale in the primary market through Ticketmaster, Ticketmaster will often communicate to ticket purchasers (within moments of the offered sale time) that "no tickets are available" or that there are "technical problems" with the purchase and immediately redirect purchasers to the TicketsNow website where tickets are offered and available at prices that are often many times higher than the face value of the ticket.

38.     This automatic redirection to the TicketsNow website and the sale of tickets at significant mark-up to the purchaser above the face value of the ticket is not adequately or reasonably communicated to the purchaser.

39.     Many purchasers have purchased tickets from the TicketsNow website at a market value that was significantly above the face value of the tickets without being

reasonably and adequately informed that they were no longer purchasing tickets in the primary ticket market through Ticketmaster.  They are also not informed of the face value of the tickets at the time of the purchase.

40.     Ticketmaster, in an open letter dated February 10, 2009, apologized for this precise conduct in the sale of tickets to purchasers involving the Bruce Springsteen concerts that went on sale on February 2, 2009.

41.     As part of its apology and remediation program, refunds have been offered to purchasers of Bruce Springsteen tickets on the difference between the face value of the ticket (as offered for sale in the primary market through Ticketmaster) and the actual market value purchase price paid (as actually purchased in the secondary market through TicketsNow).

42.     On May 11, 2009, in response to the uproar over Ticketmaster's misconduct with respect to Bruce Springsteen tickets, Minnesota Governor Tim Pawlenty signed into law a bill (nicknamed the "Springsteen" law) that forbids an initial seller of tickets from "divert[ing] tickets from the initial sale to the general public to be sold in any other manner or under any other terms" than those agreed to by provider of the event or venue.  The new law, which goes into effect August 1, 2009, makes diverting tickets a misdemeanor in Minnesota.  The Springsteen law provides no civil remedies or compensation to customers for past or future diversion of tickets from an initial seller to be sold in a manner or under terms contrary to the manner or terms agreed to by the provider of the event or venue.

43.     Further, on February 23, 2009, defendant Ticketmaster entered into a settlement with the New Jersey Attorney General's Office regarding claims of consumer

fraud made by over 2,000 consumers in relation to the sale of the Bruce Springsteen concert tickets.

44.    The New Jersey settlement compelled Ticketmaster to provide certain consumers with either entry into a drawing to purchase Springsteen concert tickets or a coupon for discounted concert tickets for a subsequent event, and/or a refund of overpayments made to TicketsNow.  The New Jersey Attorney General also compelled Ticketmaster to erect a "wall" between Ticket master's website and TicketsNow.com for at least a year.

45.    Ticketmaster's apology, and the free tickets and/or refunds provided under the New Jersey settlement, related only to ticket sales for Bruce Springsteen concerts.  On information and belief, Ticketmaster has engaged in the same conduct in numerous prior instances with respect to tickets for events such as the Elton John/Billy Joel concert attended by Plaintiff, and concerts by Phish, the Grateful Dead, Britney Spears, Radiohead, the Wizard of Oz, Hannah Montana and numerous others.  Defendants, however, have offered no remedy for their conduct related to the sale of tickets for any concert or event other than the Springsteen concert.

## CLASS ALLEGATIONS

46.    The proposed Class is presently defined as follows:

All persons who attempted to purchase tickets for various events from Defendant, Ticketmaster Entertainment, Inc., ("Ticketmaster"), were directed by Ticketmaster to Defendant, TicketsNow.com, Inc. ("TicketsNow"), and who purchased tickets from TicketsNow at a ticket price that was higher than the face value of the tickets during the period beginning on January 15, 2008 (the date of the acquisition of TicketsNow by Ticketmaster) through the present.

Excluded from the Class are individuals who purchased tickets for the May 11 Bruce Springsteen Concert at Xcel Energy Center and were reimbursed for the difference between the price they paid and the face value of the tickets. Also excluded from the Class are the Defendants, any entity in which Defendants have a controlling interest and any officers, directors or employees of the Defendants.

47.     The proposed Class is so numerous that the individual joinder of all its members is impractical.  The exact number of class members is unknown at this time but can be ascertained through appropriate investigation and discovery of the Defendants' records. Plaintiff believes that the number of class members is in the hundreds of thousands or even millions.  As a result, joinder of all class members in a single action is impractical.

48.     The Class is manageable, and its members are identifiable through the Defendants' business records.

49.     There exists in this matter questions of law and fact arising out of the Defendants' conduct which are common to all members of the Class and which questions predominate over individual questions.  Among the numerous questions of law and fact common to the Class are:

a.     whether the Defendants engaged in an illegal scheme to divert tickets from Ticketmaster to TicketsNow via third-party brokers or other individuals or entities in order to inflate the price of the tickets and hence the revenue generated for the benefit of Ticketmaster;

b.     whether Ticketmaster intentionally redirected customers from its website to TicketsNow.com without adequately indicating that the customers were being sent to a site that would charge substantially more for the same tickets sought on Ticketmaster;

c.     whether Ticketmaster intentionally redirected customers from the Ticketmaster website to TicketsNow.com, even though tickets were still available at Ticketmaster;

d.     whether Defendants conspired together to manipulate ticket sales with the objective of redirecting tickets from the primary market to the

secondary market where such tickets would be sold at prices above face value;

e.   whether Ticketmaster used or endorsed the use of software or other technology in order to redirect tickets from the primary market to Ticketsnow.com;

f.   whether Defendants were unjustly enriched by their acts and omissions, at the expense of the Plaintiff and the Class;

g.   whether the Defendants made material misrepresentations of fact, or omitted material facts to Plaintiff and the Class regarding the ticket sale transactions, which material misrepresentations or omissions operated as a fraud and deceit upon the Class;

h.   whether the acts and omissions of the Defendants violated the Minnesota consumer protection statutes alleged herein;

i.   whether Plaintiff and the putative class sustained damage and loss thereby;

j.   the scope, extent, and measure of damages and equitable relief that should be awarded; and

k.   whether the Defendants' acts and omissions were sufficiently wrongful so as to entitle Plaintiff and the Class to attorneys' fees, prejudgment interest, and costs of suit.

50.   Plaintiff's claims are typical of the claims of the Class members they seek to represent.   Plaintiff and all other class members sustained damages arising out of the Defendants' common course of conduct as complained of herein.

51.   The prosecution of separate actions by individual members of the Class would risk inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants and incompatible rights for members of the Class.

52.   Adjudication with respect to individual class members would, as a practical matter, prove dispositive of the interests of other class members not parties to the individual

adjudications and/or substantially impede the ability of the non-party class members to protect their interests.

53.     The questions of fact and law common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this action.

54.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel experienced in complex civil and class action litigation and said counsel has no adverse interests and is qualified to serve as class counsel.  Plaintiff understands the nature of the claims herein, has no disqualifying factors, and will vigorously represent the interests of the Class.

**COUNT I**
**VIOLATION OF THE MINNESOTA CONSUMER FRAUD ACT**

55.     Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

56.     At all times relevant and material hereto, the Defendants sold merchandise within the meaning of the Minnesota Consumer Fraud Act ("CFA"),  Minn. Stat. § 325F.68, *et.seq*.

57.     During the relevant time period, Defendants scheme of diverting tickets and customers from Ticketmaster to TicketsNow constituted a "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice" within the meaning of the CFA, for one or more of the following reasons:

   a.   Defendants illegally engaged in a scheme to defraud Plaintiff and the Class by offering tickets at face value and then, after the tickets went on sale, claiming to be "sold out" of said tickets or that tickets were

14

otherwise unavailable and redirecting the class members to their subsidiary site, TicketsNow, resulting in class members having to pay prices well above the face value and hence suffering an ascertainable loss;

b. Defendants knowingly concealed, suppressed, or omitted material information regarding the sale of the majority of their tickets, specifically failing to inform class members and the public that either prior to the public sale or immediately thereafter, tickets would be sold and/or transferred to third party brokers for resale on TicketsNow's website, and then telling class members that the tickets were unavailable and redirecting them to TicketNow's site, thereby precluding class members from the opportunity to pay only face value for their tickets, with the intent to induce reliance upon such concealment, suppression, or omission;

c. Defendants engaged in unconscionable marketing, promotion, and advertising practices in offering the public tickets for events and then, before the public has any meaningful opportunity to purchase said tickets for face value, claiming that the tickets are no longer available and redirecting them to TicketsNow, where the tickets were available but only at a much higher price; and

d. Defendants engaged in an unconscionable commercial practice by telling customers that no tickets were available and redirecting them to TicketsNow when, in fact, tickets were still available through Ticketmaster.

58.     Defendants engaged in the above deceptive acts with the intent that class members rely upon them in connection with the sale of tickets.

59.     Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent practices had the tendency, capacity, and likelihood to deceive Plaintiff and the Class.

60.     Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent practices caused Plaintiff and the Class to

suffer ascertainable losses in the amount of the monies they expended in paying for the tickets that was above the cost of the tickets on the Ticketmaster website.

61.     Plaintiff and class members would not have expended such monies for tickets had they been available on the Ticketmaster site at face value, as represented by Defendant Ticketmaster prior to the sale of the tickets.

62.     Plaintiff and the Class would not have expended such monies for tickets had they known of Defendants' scheme, or the extent of said scheme regarding the marketing, promotion, and advertisement of the sale of event tickets.

63.     Plaintiff and the class suffered ascertainable losses and, accordingly, were harmed by the Defendants' wrongful and illegal conduct in violation of the CFA, and are entitled to compensatory damages and other relief in an amount to be determined at trial.

## COUNT II
## VIOLATION OF THE MINNESOTA UNLAWFUL TRADE PRACTICES ACT

64.     Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

65.     At all times relevant and material hereto, the Defendants sold merchandise within the meaning of the Minnesota Unlawful Trade Practices Act ("UTPA"), Minn. Stat. § 325D.09 *et.seq*.

66.     During the relevant time period, Defendants knowingly misrepresented the true quality and origin of the tickets they were selling, within the meaning of the UTPA, for one or more of the following reasons:

    a.     By deceptively and falsely claiming that they were "sold out"
           of tickets or that tickets were otherwise unavailable, when in

fact tickets were available but had been diverted to another entity controlled by Ticketmaster; and

b.      By deceptively and falsely offering for "re-sale" on TicketsNow tickets that had been fraudulently diverted to TicketsNow from Ticketmaster, and that otherwise would not have been "re-sale" tickets had Ticketmaster not wrongly diverted the tickets to TicketsNow, as alleged herein.

67.      Defendants engaged in the above unlawful trade practices acts with the intent that class members rely upon them in connection with the sale of tickets.

68.      Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent trade practices had the tendency, capacity, and likelihood to deceive Plaintiff and the Class.

69.      Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent trade practices caused Plaintiff and the Class to suffer ascertainable losses in the amount of the monies they expended in paying for the tickets that was above the cost of the tickets on the Ticketmaster website.

70.      Plaintiff and class members would not have expended such monies for tickets had they been available on the Ticketmaster site at face value, as represented by Defendant Ticketmaster prior to the sale of the tickets.

71.      Plaintiff and the Class would not have expended such monies for tickets had they known of Defendants' scheme, or the extent of said scheme regarding the marketing, promotion, and advertisement of the sale of event tickets.

72.      Plaintiff and the class suffered ascertainable losses and, accordingly, were harmed by the Defendants' wrongful and illegal conduct in violation of the UTPA, and are entitled to compensatory damages and other relief in an amount to be determined at trial.

## COUNT III
## VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE
## PRACTICES ACT

73.     Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

74.     At all times relevant and material hereto, the Defendants sold merchandise within the meaning of the Minnesota Uniform Deceptive Trade Practices Act ("UDTPA"), Minn. Stat. § 325D.43 *et.seq*.

75.     During the relevant time period, Defendants represented that the tickets they were selling were of a particular standard, quality, or grade, when they were of another, within the meaning of the UDTPA, by deceptively and falsely offering for "re-sale" on TicketsNow tickets that had been fraudulently diverted to TicketsNow from Ticketmaster, and that otherwise would not be "re-sale" tickets had Ticketmaster not wrongly diverted the tickets to TicketsNow, as alleged herein.

76.     Defendants' conduct, as alleged herein, created a likelihood of confusion or of misunderstanding, for the following reasons:

> a.     By diverting large quantities of tickets from Ticketmaster to TicketsNow after the tickets initially went on sale, Defendants deceived customers into believing that Ticketmaster was sold out of tickets, when in fact this was not the case;

> b.     By redirecting customers to TicketsNow (a Ticketmaster entity), Defendants created the false impression that customers were still purchasing tickets from Ticketmaster at face value, when in fact this was not the case; and

> c.     By offering fraudulently diverted tickets to customers on TicketsNow as "re-sale" tickets, when in fact these tickets would not have been "re-sale" tickets had Ticketmaster not

> fraudulently diverted the tickets to TicketsNow, as alleged
> herein.

77.   Defendants engaged in the above unlawful trade practices acts with the intent that class members rely upon them in connection with the sale of tickets.

78.   Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent trade practices had the tendency, capacity, and likelihood to deceive Plaintiff and the Class.

79.   Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent trade practices caused Plaintiff and the Class to suffer ascertainable losses in the amount of the monies they expended in paying for the tickets that was above the cost of the tickets on the Ticketmaster website.

80.   Plaintiff and class members would not have expended such monies for tickets had they been available on the Ticketmaster site at face value, as represented by defendant Ticketmaster prior to the sale of the tickets.

81.   Plaintiff and the Class would not have expended such monies for tickets had they known of Defendants' scheme, or the extent of said scheme regarding the marketing, promotion, and advertisement of the sale of event tickets.

82.   Plaintiff and the class were harmed by the Defendants' wrongful and illegal conduct in violation of the UDTPA, and are entitled to declaratory and injunctive relief prohibiting Defendants from further engaging in the deceptive scheme alleged herein.

## COUNT IV
## VIOLATION OF THE MINNESOTA FALSE STATEMENT IN ADVERTISING ACT

83.     Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

84.     At all times relevant and material hereto, the Defendants advertised and sold merchandise within the meaning of the Minnesota False Statement in Advertising Act ("FSA"), Minn. Stat. § 325F.67.

85.     Defendants' scheme of diverting tickets and customers from Ticketmaster to TicketsNow included one or more advertisements which contained a material assertion, representation, or statement of fact which was untrue, deceptive, or misleading, within the meaning of the FSA, for one or more of the following reasons:

> a. By offering tickets at face value and then, after the tickets went on sale, claiming to be "sold out" of tickets or that tickets were otherwise unavailable from Ticketmaster, when in fact this was not the case;
>
> b. By failing to inform class members and the public that either prior to the public sale or thereafter, tickets would be sold and/or transferred to third party brokers for resale on TicketsNow's website, and then telling class members that the tickets were unavailable and redirecting them to TicketNow's site; and
>
> c. By offering tickets for "re-sale" on TicketsNow at a much higher price when, in fact, tickets would still have been available through Ticketmaster at face value had Defendants not engaged in the unlawful scheme alleged herein.

86.     Defendants engaged in the above deceptive acts with the intent that class members rely upon them in connection with the sale of tickets.

87.     Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent practices had the tendency, capacity, and likelihood to deceive Plaintiff and the Class.

88.     Defendants' concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and fraudulent practices caused Plaintiff and the Class to suffer ascertainable losses in the amount of the monies they expended in paying for the tickets that was above the cost of the tickets on the Ticketmaster website.

89.     Plaintiff and class members would not have expended such monies for tickets had they been available on the Ticketmaster site at face value, as represented by defendant Ticketmaster prior to the sale of the tickets.

90.     Plaintiff and the Class would not have expended such monies for tickets had they known of Defendants' scheme, or the extent of said scheme regarding the marketing, promotion, and advertisement of the sale of event tickets.

91.     Plaintiff and the class suffered ascertainable losses and, accordingly, were harmed by the Defendants' wrongful and illegal conduct in violation of the FSA, and are entitled to compensatory damages and other relief in an amount to be determined at trial.

## COUNT V
## FRAUDULENT MISREPRESENTATION AND/OR SUPPRESSION

92.     Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

93.     Defendants concealed from Plaintiff, and the Class, the truthful and complete information regarding the illegal scheme involving the Defendants' mispresentations of the availability of tickets for face value on Ticketmaster which were instead transferred en masse to third-party brokers for resale on TicketsNow.com, at grossly inflated prices, without Plaintiff or any class member having any reasonable or meaningful opportunity to purchase said tickets at face value.

94.     Defendants r marketed, promoted, and advertised the presence and availability of event tickets for face value on Ticketmaster's website when, in fact, there would be no such availability for Plaintiff or the Class to purchase said event tickets from the Ticketmaster site at face value.

95.     The foregoing fraudulent omissions and misrepresentations caused Plaintiff and the putative Class to suffer losses and damages in the amount of the monies they expended in paying for the tickets that was above the cost of the tickets on the Ticketmaster website, without knowing the existence and extent of Defendants' illegal ticket transfer scheme.

96.     Defendants' fraudulent omissions and misrepresentations had tendency, capacity, and likelihood to deceive Plaintiff and the Class.

97.     Defendants intended, or consciously disregarded, that Plaintiff and class members would rely on its fraudulent omissions and misrepresentations, so that they would have no meaningful choice but to expend monies and pay a price for the tickets that was above the face value of the tickets.

98.     Defendants had superior knowledge regarding the tickets and their availability, and regarding Defendants' illegal marketing, promotion, and advertising scheme to offer tickets to consumers at face value and then deny them tickets at that price and reroute them instead to Ticketsnow.com for tickets at a grossly inflated cost, to which knowledge Plaintiff and the class members had no access.

99.     Plaintiff and the class members would not have expended such monies for tickets had they known of Defendants' illegal "bait and switch" marketing scheme, or the extent of said scheme.

100.     Plaintiff and the class members would not have expended such monies but for mistaken facts arising from the Defendants' fraudulent concealment and/or suppression of its illegal "bait and switch" marketing scheme.

101.     Plaintiff and the class members relied upon and were accordingly harmed by the Defendants' fraudulent concealment and/or suppression, and are entitled to compensatory damages in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT

102.     Plaintiff hereby incorporates the allegations contained in the previous paragraphs as if fully set forth herein.

103.     Defendants have been enriched by their fraudulent acts and omissions alleged herein.

104.     These fraudulent acts and omissions allowed the Defendants to gain millions of dollars in profits that would not have been gained but for Defendants' fraudulent acts and omissions.

105.     Plaintiff and the putative Class paid Defendants an amount that exceeds the value of the tickets as a result of Defendants' fraudulent acts and omissions.

106.     Plaintiff and the putative Class suffered damages due to Defendants' acts and omissions as alleged herein.

107.   Defendants have been unjustly enriched as a result of its fraudulent acts and omissions.

108.   Defendants lack any legal justification for having engaged in a course of fraudulent acts and omissions as alleged herein at Plaintiff's and the putative Class' expense.

109.   Plaintiff and Class are entitled to disgorgement of the monies by which the Defendants were unjustly enriched, other equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, on his own behalf and on behalf of all others similarly situated, as follows:

a.   an Order certifying the Plaintiff Class determining that this action is a proper class action maintainable under Federal Rules of Civil Procedure, 23, and appointing Plaintiff and his counsel to represent the Class;

b.   that judgment be entered against the Defendants in an undetermined amount for violation of the CFA, UTPA, and FSA;

c.   for actual damages and costs of suit including attorneys' fees, pursuant to Minn. Stat. § 8.31 subd. 3a, on the CFA, UTPA, and FSA claims;

d.   that a declaratory judgment and injunction be entered against Defendants for violations of the UDTPA;

e.   that judgment be entered against the Defendants in an undetermined amount for the claim of fraudulent misrepresentation and/or suppression;

f.   that judgment be entered against Defendants for actual damages, disgorgement of unjust enrichment, and costs of suit including attorneys' fees, pursuant to the fraudulent misrepresentation and/or suppression claims;

g.   for pre-judgment and post-judgment interest at the maximum rate allowable at law;

h.   for equitable and injunctive relief enjoining Defendants from pursuing the deceptive acts and practices described in this Complaint;

i.  for experts' fees and costs; and

j.  for such further legal and equitable relief as the Court deems just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff demands trial of all issues by jury.


Dated: May 15, 2009

By: ____/s/ Kent M. Williams_____
Kent M. Williams, Minn. No. 222884
WILLIAMS LAW FIRM
1632 Homestead Trail
Long Lake, MN  55356
763-473-0314

Attorney for Plaintiff